THOMAS McBRIDE AND ALICE McBRIDE, RESPONDENTS,
v. THE PENNSYLVANIA RAILROAD COMPANY, APPEL-
·LANT.

Submitted December 10, 1923—Decided March 3, 1924.

Mrs. McB. was a passenger on a vestibuled train of the defendant,
bound for Jersey City. To reach this destination a change of
cars was necessary at the Manhattan Transfer. At the Man-
hattan Transfer the station platform was on a level with the
trap doors covering the steps in the vestibules of the cars. These
trap doors were held in place, when lowered, by a catch. These
catches were operated and the doors released and elevated by
springs pressed by the foot, As Mrs. McB. stepped ·on the sta-
tion platform with one foot and was in the act of raising her
other foot from the trap door, the door rose and threw Mrs. McB.·
down, injuring her. A test of the door was immediately made
and it was found to work properly. *Held*, in an action to re-
cover damages for the injury sustained—(1) that a common car-
rier is bound to use a high degree of care to protect its passen-
gers from danger that foresight can anticipate; (2) that the
duty of the defendant was not fully discharged by having the
trap door over which Mrs. McB. was invited to pass in good
working order as the defendant was chargeable with the knowl-
edge that, unless the trap door was securely fastened it might
rise and cause an injury; (3) that from the testimony sub-
mitted the jury were warranted in drawing the inference that
those upon whom there was imposed the duty of using a high
degree of care to make reasonably safe the means of exit from
the train had failed in the discharge of this duty.

On appeal from the Hudson County Circuit Court.

For the appellant, *Wall, Haight, Carey & Hartpence.*

For the respondent, *Alexander Simpson.*

The opinion of the court was delivered by

KATZENBACH, J.   On September 4th, 1922, Thomas Mc-
Bride and his wife, Alice, were passengers on a train of the
Pennsylvania Railroad Company.   They had boarded the
train at Wilmington, Del., en route to Jersey City, where

they resided. To reach their destination it was necessary to make a change of trains at Manhattan Transfer. The train upon which they had traveled from Wilmington was a vestibuled train. Trap doors covered the steps. These doors were raised and lowered on hinges, which were fastened to the end of the car at the extreme end of the door. The doors were held in place when on a level with the car platform by means of a catch, which clamped over the door at the end of the door opposite the hinges. The catches were similar to the ordinary door catch. The catches were operated and the doors released by means of springs, which were pressed down for that purpose by the foot. At Manhattan Transfer the platform of the station is upon the same level as the vestibule of a vestibuled car. It is unnecessary for a passenger to use the steps of the car to reach the station platform. Owing to the crowded condition of the train Mr. and Mrs. McBride and a daughter had occupied seats in a smoking car. Mrs. McBride was a cripple. She had a congenital dislocation of both hips. Because of Mrs. McBride's condition the McBrides waited until other passengers had passed out. They then proceeded to the rear of the car in which they had been riding and turned to the left to step off the car to the station platform. As Mrs. McBride stepped on the station platform with one foot and was in the act of raising her other foot from the trap door, the door suddenly rose, throwing Mrs. McBride down. Her right foot was thrown forward by the fall and passed under the trap door, causing an injury. Trainmen came immediately to the scene of the accident. The trap door was tested by being lowered and raised. When lowered to its normal position, level with the rest of the platform, the catch held it in position. When the foot was placed upon the spring the door was released and rose properly.

Mr. and Mrs. McBride instituted a suit in the Hudson County Circuit Court against the railroad company to recover damages for the injuries sustained by Mrs. McBride as a result of this accident, and to recover for Mr. McBride the expenditures for medical attendance made by him and

for the deprivation of the society and assistance of his wife during the period of her incapacity. The negligence of the defendant alleged by the plaintiffs was stated in the complaint to be the allowing of "a certain door or platform of the said train which connected with the platform of the said railway station to be and remain open when same should have been and remained closed and while plaintiff Alice McBride was leaving said train she was caused to fall through and was injured."

The plaintiffs' witnesses testified to the foregoing facts. The defendant offered no evidence. A motion to direct a verdict in favor of the defendant was made on the ground that no negligence of the defendant had been established and that the accident was either inevitable or due to the failure of Mrs. McBride to use reasonable care in examining the door before she stepped upon it. This motion was denied. The trial judge submitted the case to the jury, which returned separate verdicts for Mr. and Mrs. McBride. From the judgments entered upon these verdicts the railroad company has appealed.

The sole ground of appeal argued is that there was no evidence in the case to warrant a jury in finding that the allegations of negligence had been sustained and consequently the motion to direct a verdict for the defendant should have been granted.

The legal duty of a defendant to its passengers under the circumstances shown by the evidence in this case is well settled and was succinctly stated in this court by Mr. Justice Trenchard in the case of *Rivers* v. *Pennsylvania Railroad Company,* 83 *N. J. L.* 513, in these words: "A common carrier of passengers must use a high degree of care to protect them from danger that foresight can anticipate.

"By foresight is meant not foreknowledge absolute, nor that exactly such an accident as has happened was expected or apprehended, but rather that the characteristics of the accident are such that it can be classified among events that, without due care, are likely to occur, and that due care would prevent. *Hansen* v. *North Jersey Street Railway Company,* 64 *N. J. L.* 686. * * *.

"Now, a railroad company is under no legal obligation to provide vestibuled trains for its passengers, but, having done so, it is its duty to use reasonable care to maintain them in a safe condition."

Was there evidence in the present case from which the jury could find that the railroad company had not fulfilled its obligation to Mrs. McBride? We think there was. While it is true that after the accident had occurred an examination of the trap door, which arose and caused the injury to Mrs. McBride, resulted in finding that it worked properly, so that the accident was not due to any defective condition of the door; yet the full duty of the railroad company to Mrs. McBride was not discharged by having a door which was in good working order, for the company was chargeable with the knowledge that unless a trap door of this kind is securely fastened, when passengers are passing over it, it might arise and cause an injury of the nature of that which happened to Mrs. McBride. It was therefore a proper inference for the jury to draw from the testimony submitted that those in charge of the operation of the train and having imposed upon them the duty of using a high degree of care to make reasonably safe the means of exit from the train had not used that high degree of care which the law exacts in seeing that the trap door was fastened by the catch which had been placed on the car to hold the door in position, before passengers were invited to leave the train. Whether the railroad company had discharged its duty to Mrs. McBride was a question for the determination of the jury. It was a question upon which fair-minded men might reasonably differ, but for that very reason it was proper for the trial court to leave the question to the jury for determination.

The issue presented by the pleadings was the position of the door and not its condition. We think from the evidence presented that the jury were entitled to draw the inference, which they evidently did, that the employes of the railroad company were negligent in not properly fastening the door before permitting it to be used as a means of exit.

The judgments under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, MINTURN, BLACK, KATZENBACH, CAMPBELL, HEP-PENHEIMER, GARDNER, VAN BUSKIRK, CLARK, JJ.   11.

*For reversal*—None.